Timothy M. Bechtold
**BECHTOLD LAW FIRM, PLLC**
PO Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| FLATHEAD-LOLO-BITTERROOT CITIZEN TASK FORCE and WILDEARTH GUARDIANS, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF MONTANA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      This case addresses the State of Montana's ongoing efforts to kill Montana's gray wolves, including by trapping and snaring.  While targeting wolves, however, trapping and snaring exacerbates the ongoing trapping of grizzly bears, which are protected under the Endangered Species Act ("ESA") and whose habitat overlaps with gray wolves.  Even before the State's latest actions on August

17, 2023, wolf trapping and snaring in Montana already caused the accidental capture and killing of grizzly bears.  Because trapping and snaring of protected species constitutes unlawful "take" under the ESA and threatens irreparable harm, the State's continued authorization and recent expansion of wolf trapping and snaring in grizzly bear habitat is unlawful and should be enjoined.

2.    In Montana, grizzly bears are distributed in the Greater Yellowstone Ecosystem and the Northern Continental Divide Ecosystem, and present in smaller numbers in the Cabinet-Yaak Ecosystem, the Bitterroot Ecosystem, and the areas between the Grizzly Bear Recovery Areas. Wolves and coyotes are prevalent in all of these areas, and Montana's recent increases in wolf trapping and snaring thus introduce new dangers to grizzly bears.

3.    In the years since the federal government's 2011 delisting of gray wolves from the ESA, Montana has quickly moved to ramp up wolf killing throughout the state, including through trapping and snaring in grizzly bear habitat. In recent years, wolf and coyote trapping and snaring in Montana has resulted in capture of threatened grizzly bears in wolf and coyote traps and snares.  Traps and snares are indiscriminate and are known to capture, injure, and kill non-target species, including grizzly bears.

4.    On August 17, 2023, Montana expanded the wolf-trapping and snaring program in the state, including in occupied grizzly bear habitat.  These

1

measures are intended to create a new wave of wolf killings in Montana through trapping and snaring.

5.      Montana has also authorized continued wolf baiting in grizzly bear habitat.  Baits are designed to attract carnivores and, accordingly, attract grizzly bears to the site of wolf traps and snares.

6.      The Montana Fish & Wildlife Commission approved new wolf and furbearer regulations at its August 17, 2023, meeting. These regulations expand the area where wolf trapping will be allowed in occupied grizzly bear habitat during the non-denning seasons.

7.      To protect grizzly bears from the trapping and snaring threat posed by Montana's wolf-killing scheme, Plaintiffs seek a declaratory judgment that Montana is violating the ESA, and an injunction ordering Montana to comply with the ESA.

## JURISDICTION AND VENUE

8.      Plaintiffs bring this action pursuant to the ESA, 16 U.S.C. § 1540. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question) and the citizen suit provision of the ESA, 16 U.S.C. § 1540(g), and may issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201-02 and 16 U.S.C. 1540(g).

9.     Venue is proper in this District pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because the ESA violations alleged in this Complaint occur in this District.  Venue is proper in the Missoula Division of this District because many of the trapping and snaring activities will take place in this Division and Plaintiffs' offices are located in this Division.

10.     Plaintiffs have provided sixty days' written notice of their intent to file this suit as required by section 11(g) of the ESA. 16 U.S.C. § 1540(g)(2)(C). On May 9, 2023, Plaintiffs provided Montana written notice of Plaintiffs' intent to sue under the ESA for authorizing wolf trapping and snaring in grizzly bear habitat.

## PARTIES

11.     Plaintiff Flathead-Lolo-Bitterroot Task Force (Task Force) is an incorporated non-profit public interest organization based in Missoula, Montana. Task Force brings this action on its own behalf and on behalf of its adversely affected members. Task Force works to protect the natural features and primitive aspects of the Northern Rockies and specifically the Flathead, Lolo and Bitterroot National Forests, the native fish and wildlife and habitat for Threatened and Endangered Species –including the grizzly bear – for our continued use and enjoyment. Task Force educates the public on issues affecting our area of concern

and participates in the development of long term plans for National Forests and grizzly bear recovery.

12.     Plaintiff WildEarth Guardians ("Guardians") is a non-profit conservation organization dedicated to protecting and restoring the wildlife, wild places, wild rivers, and the health of the American West. Guardians is specifically committed to ensuring the survival and recovery of predators, including grizzly bears in Montana and the lower 48 States. Guardians has approximately 235,000 active members and supporters across the American West, including many who reside in Montana. Guardians maintains an office in Missoula, Montana, where most of its work to conserve grizzly bears occurs. Guardians brings this action on behalf of itself, its members, and its supporters. Guardians' members, supporters, and staff are dedicated to ensuring the long-term survival and recovery of predators in Montana, including grizzly bears, and ensuring the State of Montana and the Fish and Wildlife Service comply with the law, including the federal Endangered Species Act

13.     Plaintiffs have long-standing interests in the preservation and recovery of grizzly bears in Montana, both because they and their members place a high value on these species, and because the presence of grizzly bears is essential to a healthy functioning of the ecosystem.  Plaintiffs have been active in seeking to protect and recover grizzly bears through a wide array of actions, including public

outreach and education, scientific analysis, and advocacy intended to promote achievement of healthy ecosystem functioning in the region.

14.    Plaintiffs' members also use Montana's grizzly bear habitat for spiritual and traditional activities and recreational pursuits, including hiking, camping, backpacking, wildlife viewing and aesthetic enjoyment.  In doing so, Plaintiffs' members and staff seek to observe, photograph, and study grizzly bears in their native habitat.  Plaintiffs derive aesthetic recreational, scientific, inspirational, religious, spiritual, and other benefits from these activities.

15.    Wolf traps and snares kill and maim indiscriminately, and past and reasonably certain future trapping and snaring of grizzly bears in wolf and coyote sets has caused, and will continue to cause, harm to Plaintiffs' members' interests in the well-being of individual grizzly bears, as well as domestic dogs, wolves, and other animals.  Montana's challenged wolf-trapping scheme will also reduce opportunities for Plaintiffs' members to experience grizzly bears in the wild in Montana by causing the reasonably certain trapping, snaring, injury, and mortality of these species.  The legal violations alleged in this complaint therefore cause direct injury to the aesthetic, conservation, recreational, scientific, educational, inspirational, personal, spiritual, religious, and wildlife preservation interests of Plaintiffs and their members.

16.     Plaintiffs' aesthetic, conservation, recreational, scientific, educational, inspirational, personal, spiritual, religious, and wildlife preservation interests have been, are being, and, unless the relief prayed for in this Complaint is granted, will continue to be adversely and irreparably injured by Montana's failure to comply with federal law.  These are actual, concrete injuries, traceable to Montana's conduct, that would be redressed by the requested relief.  Plaintiffs have no adequate remedy at law.

## LEGAL BACKGROUND

17.     "The ESA is 'the most comprehensive legislation for the preservation of endangered species ever enacted by any nation.'  It represents a commitment 'to halt and reverse the trend toward species extinction, whatever the cost.'"  *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1059 (9th Cir. 2018) (quoting *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180, 184 (1978)) (internal citation omitted).

18.     To that end, Section 9 of the ESA prohibits the "take" of an endangered species unless specifically authorized by the relevant federal agency in an incidental take statement.  16 U.S.C. §§ 1538(a)(1)(B), 1539.  The ESA defines "take" to mean "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect or to attempt to engage in such conduct."  *Id.* § 1532(19).  "Take" includes direct as well as indirect harm and need not be purposeful.  *See Babbitt v. Sweet Home Chapter of Comtys. for a Great Oregon*, 515 U.S. 687, 704 (1995).

6

19.     All grizzly bears in Montana have the full protection of the

Endangered Species Act regardless of age, sex, reproductive status and whether

they are inside or outside of designated Recovery Areas.

20.     The ESA's take prohibition applies equally to threatened species,

unless otherwise indicated by a species-specific rule promulgated by the relevant

federal agency pursuant to ESA § 4(d).  *See* 50 C.F.R. § 17.31(a).  The Fish and

Wildlife Service oversees ESA-compliance with respect to grizzly bears. The

Service's species-specific rules for grizzly bears allow for no exception of take in

the context of trapping or snaring of other species.  50 C.F.R. § 17.40(b).

21.     These ESA protections apply equally against trapping or snaring

authorized by a state official or agency.  "It is unlawful for any person" to "cause

[an ESA violation] to be committed."  16 U.S.C. § 1538(g).  The term "person"

includes "any officer, employee, agent, department, or instrumentality … of any

State, municipality, or political subdivision of a State … [or] any State,

municipality, or political subdivision of a State …."  16 U.S.C. § 1532(13).

22.     State hunting and trapping laws, regulations, and rules violate the

ESA's section 9 prohibition on take when "a risk of taking exists [even] if trappers

comply with all applicable laws and regulations in place."  *Animal Prot. Inst. v.*

*Holsten*, 541 F.Supp.2d 1073, 1079 (D. Minn. 2008); *accord Ctr. for Biological*

*Diversity v. Otter*, 2016 WL 233193, at *5 (D. Idaho Jan. 8, 2016), *on*

*reconsideration*, 2018 WL 539329 (D. Idaho Jan. 24, 2018).

## FACTUAL BACKGROUND

## I.     THREATENED GRIZZLY BEARS

23.     The grizzly bear, *Ursus arctos horribilis*, once numbered roughly

50,000 individuals in the western United States.  However, with European-

American settlement, grizzly bears were "shot, poisoned, and trapped wherever

they were found," eliminating them from all but a few isolated areas far removed

from human intolerance.  *Crow Indian Tribe v. United States*, 343 F. Supp. 3d 999,

1004 (D. Mont. 2018) (quotation omitted).  By the time the Service listed grizzly

bears in the contiguous United States as "threatened" under the ESA in 1975,

grizzly bears had been "reduced to less than two percent of their former range in

the lower-48 States … [and] the estimated population in the lower-48 states was

700 to 800 individuals."  U.S. Fish and Wildlife Serv., *Grizzly Bear in the Lower-*

*48 States, 5-Year Status Review: Summary and Evaluation* 3 (2021). Unlike

wolves, who have a very high reproductive rate, grizzly bears have one of the

lowest reproductive rates of any North American mammal. Therefore, the loss or

serious injury to individual bears, especially females, can be the difference

between population stability or decline and even survival.

24.     Conservation efforts under the ESA have helped bring grizzly bears back from the brink, but the species remains confined to a few remnant populations in the northwest United States.  To aid grizzly bear recovery, the Fish and Wildlife Service has designated six areas as grizzly bear recovery zones.

25.     Montana is home in part to four of these recovery zones: (1) the Northern Continental Divide; (2) the Cabinet-Yaak; (3) the Greater Yellowstone; and (4) the Bitterroot. Montana also has two Demographic Connectivity Areas designated under the Grizzly Bear Conservation Strategy for the Northern Continental Divide Ecosystem. Grizzly bears' current known distribution also extends well beyond the designated recovery zones. *See* U.S. Fish and Wildlife Service Species List Area map (https://www.fws.gov/media/grizzly-bear-species-list-area-map-0)(July 19, 2023):

**Species List Area for Grizzly Bears**



Species List Areas (or "may be present" map) help federal agencies determine where effects to listed species should be considered for consultation from actions they carry out, fund, or permit to meet requirements under Section 7(a) of the Endangered Species Act (ESA). As grizzly bears expand their range, the SLA is intended to be spatially inclusive of all areas that meet the "may be present" methodology for grizzly bears. The "may be present" methodology is derived from current estimated occupied range and verified location data outside of current distributions; not all areas that are designated as "may be present" meet the criteria to be included in estimated occupied range. Local evaluation is needed by federal Level 1 ESA Streamlining Teams to determine potential effects of agency actions where grizzly bears "may be present." Identifying locations where grizzly bears "may be present" will facilitate project planning activities that promote grizzly bear conservation and recovery. The grizzly bear SLA is updated with any new verified sightings every 90 days. Although we receive sighting information throughout the year, there can be a lag between receipt of the information, verification of grizzly bear, and updating the map. To provide the most up-to-date information for Section 7 consultation pending those updates, we will notify the relevant federal agency personnel when any new HUCs are added. We will continue to supply an updated verified map to all partners through PAC. Last updated July 19, 2023 with data from 2013 to July 19, 2023.

26.    Grizzly bears are habitat "generalists" that "occupy[] habitats from deserts to alpine mountains and everything in between."  U.S. Fish and Wildlife Service, *Status Assessment for the Grizzly Bear* 47 (2021).  Grizzly bear habitat and range include private lands adjacent to public lands.  Over the last decade, grizzly bears in Montana have been widely reported to range onto private property, including fruit orchards, ranchlands, and housing subdivisions.

27.    According to the Service, "grizzly bears are a conservation reliant species" and "[e]ven when management actions succeed in achieving biological

10

recovery goals, maintenance of viable populations of [grizzly bears] will require continuing, species-specific intervention." *Status Assessment* at 205-206 (quotation and citation omitted).

28.     Grizzly bears have a very powerful sense of smell that can detect dead animals or animal parts from very long distances. Grizzly bears' propensity to be attracted to food sources is a standard warning from Montana Fish, Wildlife & Parks and the Interagency Grizzly Bear Committee, both of which stress food security while camping in grizzly bear habitat and reducing attractants around homes, including securing garbage, bird feeders, dog food and chickens.

29.     During the Fall and early Winter pre-denning period, grizzly bears enter hyperphagia, the period when grizzly bears often travel widely for feeding to accumulate fat reserves to survive the winter hibernation. Combined with their powerful sense of smell, grizzly bears in hyperphagia are very vulnerable to being attracted to and caught in baited and scented traps.

30.     With climate change effects, some male grizzlies do not den at all. Researchers have documented these "winter bears" following wolf packs and mountain lions during the winter and taking over their kills, as well as feeding on aquatic plants.

31.    Many grizzly bears are emerging from the den earlier than in past years. When these grizzly bears emerge from their dens, they are very hungry and are attracted to baited traps set for wolves, coyotes, and other furbearers.

32.    On the south end of the Northern Continental Divide Ecosystem grizzly bears start to den during the last two weeks in November. Through December, however, many grizzly bears continue to scavenge gut piles and unretrieved elk and deer carcasses from hunting season. Other than the "winter bears," usually most grizzly bears are in the den by Christmas, with a few individuals who den in early January.

33.    The first grizzly bears emerge from their dens in late February and early March. By the end of March most males are out of their dens, and most females are out of their dens by late April. Females with cubs of the year tend to emerge from their dens toward the end of April.

34.    Verified grizzly bear observations outside of the Recovery Areas have significantly increased in recent years in Montana. Montana Fish, Wildlife & Parks published a bulletin on August 30, 2023, 8:41 AM, titled *Hunters Must Expect to See Bears* which begins with: "Grizzly bears have the potential to be found anywhere in the western two-thirds of Montana (west of Billings), and their distribution is denser and more widespread than in previous years. Some areas with

dense concentrations of grizzly bears are very accessible to hunters, especially during the archery season."

35.     On September 1, 2023, the Governor of Montana proclaimed September as Bear Aware Month. The governor's announcement includes this statement: "Currently, grizzly bears can be found in all of Montana west of Billings."

36.     The trapping seasons outside recovery areas reduce the ability of grizzly bears to naturally migrate to the Bitterroot Ecosystem and between the Northern Continental Divide Ecosystem, the Greater Yellowstone Ecosystem, and the Cabinet-Yaak Ecosystem, and thus thwart key recovery objectives and legal requirements.

## II.   PAST REPORTED TRAPPING AND SNARING OF GRIZZLY BEARS

37.     Even before Montana's current legislation and implementing regulations, which will greatly expand wolf trapping and snaring in grizzly bear habitat, individual grizzly bears have suffered harm from these practices in Montana.

38.     The State of Montana has reported seven captured grizzly bears since 2010 in traps set for wolves (three captures) or coyotes (four captures).  In one instance, Montana Fish, Wildlife & Parks found two severed grizzly bear toes in a

wolf trap, and in another incident, the department noted that a grizzly bear sustained a foot injury from trapping. These records are incomplete.

39.     Between the early 1990s and 2018 wolf and bear managers have documented 21 verified instances of grizzly bears being caught in traps primarily set for wolves and coyotes in Montana, many of whom suffered wounds. A female grizzly bear was verified to have been caught in a wolf trap in 1988.

40.     In addition to these verified grizzly bears caught by traps in Montana, there are several verified incidents of grizzly bears being caught in wolf and coyote traps and snares very close to the Montana border in Idaho, Wyoming, and British Columbia, some of which resulted in severe injuries and deaths.

41.     At least 5 grizzly bears in southeast British Columbia are known to have been caught in foothold traps set for wolves, and a grizzly bear in Wyoming was caught in a snare set for wolves. One grizzly bear was killed after being caught in a snare in an area close to Montana in British Columbia. In Wyoming, at least four grizzly bears have suffered injuries. Trail cam pictures in 2022 showed a grizzly with an amputated left foot and a female grizzly with cubs missing two toes on her left foot. In 2017 an adult grizzly was photographed with a conibear trap attached to its right front paw and in 2015 a grizzly cub was caught in a conibear trap set for marten. Lamb et al. (2022) document several other grizzly bears injured by traps.

42.     Several bear managers in Montana have received anecdotal reports of grizzly bears with traps stuck on their feet.

43.     The International Standards Technical Committee rated amputation of three or more digits and any amputation above the digits as Severe Trauma (cited in Lossa et al. 2007). A grizzly bear that has lost claws, toes or a front foot will have reduced capability of digging for food and for excavating a viable winter den. This can reduce health, reproduction, and survival.

44.     Researchers have found that grizzly bears with foot injuries, including missing toes, are more susceptible to subsequent conflict interactions with humans, which can lead to grizzly bear mortality. (Lamb et al. 2021).

45.     Because such incidents are under-reported, the number of grizzly bears captured by wolf and coyote trappers is likely much higher than these data indicate.

46.     In Montana, snares for most species are required to break loose with more than 350 pounds (approx.159kg) of dead pull strength, while for wolves this requirement is 1,000 pounds. Montana Department of Fish, Wildlife & Parks (2023). However, Lamb, et al. (2022) found that on average an adult grizzly bear has about 342 pounds (155kg) of dead pull strength, not enough to break free. Cubs and sub-adults with less pull strength are particularly vulnerable. While bears can generate more pull strength with a running start up to 20 feet, this heightens

the risk of severe injury and damage to or loss of traps. Lamb et al. also tested traps and could only free trapped adult grizzly bear feet about 20% of the time.

## III.   MONTANA'S WOLF-TRAPPING AND SNARING PROGRAM

47.   The Montana Fish and Wildlife Commission approved new wolf-trapping and snaring rules for the 2023-2024 wolf season on August 17, 2023. These rules provide for an expanded wolf-trapping regime in Montana.

48.   Coyote traps, especially with snares and baits, are also lethal to grizzly bears.  Coyoted are classified as a predator therefore no license is required, and Montana regulations allow coyote hunting and trapping year-round. Grizzly bears and particularly cubs and subadults are vulnerable to coyote traps because of their smaller feet and lower pull strength.

49.   Despite the continued threats facing grizzly bears, Montana's new rules further increase the trapping danger to grizzly bears by expanding wolf trapping and snaring in several respects.  The rules authorize individuals to kill up to 20 wolves, ten by hunting and ten by trapping, up from the previous extremely liberal harvest limit of 15 wolves per person per season.  Additionally, the wolf rules continue to permit wolf snaring and baiting in grizzly bear habitat.

50.   The wolf and furbearer regulations state that trapping for wolves can begin on the Monday after Thanksgiving (in 2023, the Monday after Thanksgiving is November 27) in all areas where wolf trapping is allowed, including public lands

occupied by grizzly bears. November 27 is right after the general big game hunting season ends, when an abundance of gut piles and unretrieved elk and deer carcasses keeps many grizzly bears from denning until several weeks later.

51.     Montana Fish, Wildlife & Parks (2022) recommends: "use baits and lures that attract target species but not other animals." However, Lamb et al. found that baited traps attracted grizzly bears, with younger bears more vulnerable. Baiting attracts grizzly bears from long distances, thus there is risk of take even in areas sparsely populated by grizzlies.

52.     Allowing continued wolf snaring and use of bait further heightens the likelihood of unpermitted grizzly bear take in connection with Montana's wolf-killing program. Snares are indiscriminate and known to catch and severely injure and kill non-target species.  Allowing the continued use of bait and other attractants heightens the dangers associated with traps and snares, as bait is known to – and is, in fact, designed to – attract a wide variety of predators.  Accordingly, grizzly bears are attracted to bait used with traps and snares.

53.     Foothold traps and neck snares can cause harm, ranging from rapid mortality to injuries that kill or impair grizzly bears long after release.  By their nature and function, traps and snares cause compression or constriction injuries that can damage tissue, restrict vascular flow, and create harmful effects beyond the constricted extremity.  The physiological effects of stress, trauma, and shock

can also cause death after release.  Toxins can be released into the blood system after traps and snares are removed, resulting in organ damage and death.

54.    Cattet et al. (2008) reported that one grizzly died approximately 10 days after being captured by a leghold snare of capture myopathy, which is a physical reaction to the stress and trauma associated with snaring. The Fish and Wildlife Service (2021) reported the death of a subadult male grizzly from exertional myopathy after being trapped in 2019. (Status Assessment for Grizzly Bear at 151).

55.    Other injuries from traps and snares include bone fractures, sprains, dislocations, tooth and gum damage from biting the traps and snares, hypothermia or hyperthermia, and dehydration.  Bone fractures to the phalanges and legs can be debilitating and result in death.  These injuries can also affect long-term survival by impairing an individual's ability to catch prey.

56.    Grizzly bears have been documented to have broken free from trap anchors with the trap stuck on their feet. Grizzly bears have been documented to flee with a trap stuck on a foot, together with the snare cable and the anchor. These bears had a lower chance of survival and certainly suffered debilitating injuries.

57.    Numerous wildlife professionals have stated that snaring is unethical and use of snares is never justified due to their indiscriminate nature and their lethality to non-target species. Along with body-gripping traps, snares and foot-

and leg-hold traps for wolves and coyotes are a direct threat to grizzly bears. Snares, whether restraining or killing types, were found to be inhumane and their use never justified. (Rochlitz 2010). Ten states have banned or restricted their use on public lands.

58.    While trapped or snared, captured animals and their young are also susceptible to predation.  In one instance, a female grizzly bear caught in a wolf trap in Montana was killed by a male grizzly bear. Orphaned young may die following the debilitation or death of their mothers in traps or snares.

59.    To prevent serious injury or death to a grizzly bear, the bear must be released from a trap within 24 hours. (Cattet et al. 2008). Wolf traps are required to be checked every 48 hours, but for all other species Montana Fish, Wildlife & Parks only recommends checking traps at least once every 48 hours, but does not require it. Many traplines are only checked once a week, meaning grizzly bear bycatch could go undetected for days and lead to mortality.

60.    Montana's wolf-trapping rules do not appreciably reduce the significant risk that grizzly bears will be incidentally caught in traps or snares intended for wolves.

61.    To prevent bears from having their feet caught in traps set for marten, Lamb et al. recommend that the elevated cubby boxes have openings large enough to pass a marten but too small for a bear to fit a whole foot through. Trapping for

marten is allowed in the portion of Montana with grizzly bears from December 1-February 15. Grizzly bears have lost claws, toes and feet to body-gripping traps set for marten within cubby boxes (Lamb et al. 2022). Montana regulations suggest an opening on the front of the cubby to be no more than 2.5" in diameter but does not require it. In fact, openings can be as large as 52 square inches.

62.     In Montana, there are no regulations or recommendations specific to preventing bycatch of grizzly bears.  Montana Wolf and Furbearer regulations state that a grizzly bear captured in a trap set for wolves will require a review, but specifies no action.

## COUNT ONE

### (Violation of Endangered Species Act—Causing unlawful take of grizzly bears)

63.     Plaintiffs hereby reallege and reincorporate all previous paragraphs.

64.     Section 9 of the ESA prohibits any person from taking an endangered species.  16 U.S.C. § 1538(a)(1)(B).

65.     By regulation, the Fish and Wildlife Service has extended the prohibition on take to grizzly bears as a threatened species.  50 C.F.R. § 17.40(b)(1)(i)(A).

66.    The ESA defines a "person" to include any "officer, employee, agent, department, or instrumentality of the Federal Government, of any State, municipality or political subdivision of a State."  16 U.S.C. § 1532(13).

67.    The ESA not only prohibits a person from taking a listed species, but it also prohibits a third party from authorizing or allowing a person to conduct an activity that results in the take of a listed species.

68.    State of Montana officials and agencies that authorize, allow, permit, or license activities that are reasonably certain to continue to result in take of threatened species are in violation of the ESA.

69.    The State of Montana has violated and continues to be in violation of the ESA by authorizing wolf and coyote trapping and snaring in grizzly bear habitat in Montana because that authorization has caused the take of grizzly bears, and is reasonably certain to cause take of grizzly bears in the future.

### PRAYER FOR RELIEF

THEREFORE, Plaintiffs respectfully request that this Court:

1.    Declare that State of Montana's authorization of wolf and coyote trapping and snaring in grizzly bear habitat violates the ESA;

2.    Enjoin the State of Montana from violating the ESA by ordering it to bring Montana's wolf-trapping and snaring regulations into compliance with federal law;

3.      Award Plaintiffs their reasonable fees, costs, and expenses, including attorney fees, associated with this litigation; and

4.      Grant Plaintiffs such further and additional relief as the Court may deem just and proper.

Respectfully submitted this 11th day of September, 2023.


/s/Timothy M. Bechtold

*Attorney for Plaintiffs*